NEW-YORK,
May, 1834.

Raymond
v.
Howland.

---

RAYMOND *vs.* HOWLAND.

*Case* lies in the name of the *principal* for a false representation made to the *agent*, whether he be a factor, commission merchant or clerk.

Where *case* was brought for a false representation as to the credit of a house to which goods were shipped, by means of which the shipment was lost *it was held*, that the action was properly brought in the name of A., the owner of the goods shipped, although B. had made advances to an amount exceeding half the value of the goods, had the control of the property, and had shipped it to the consignees ; it appearing that B. apprised the consignees that he acted only as *agent*, though he did not disclose the name of his principal. And *it was further held*, that B., releasing his interest, was a competent witness for A.

ERROR from the superior court of the city of New-York. Raymond sued Howland in an *action on the case* for false representations as to the credit of a mercantile house at *Matanzas*

to which the plaintiff was about to make a shipment of goods to be sold on commission, and subsequently made such shipment, which was lost by the insolvency of the consignees. On the trial of the cause, one *Wood* being called as a witness for the plaintiff, was objected to as interested. After evidence adduced by both parties upon the question of the interest of the witness, he executed a *release* to the plaintiff, was sworn, and proved the representation alleged to have been made by the defendant. Upon his examination, it appeared that the shipment in question was a large quantity of provisions placed by the plaintiff in his hands as *agent;* that he had agreed to advance *fifty per cent.* of the cost of the cargo, and had actually made advances beyond that amount, and the plaintiff had agreed that he should retain the control of the property for such advances. The bill of lading and invoice stated the goods to be shipped by Wood, who however wrote the house at Matanzas that he was only an *agent* in the shipment, although no one was known in the business but himself, and he therefore wished it transacted in his name alone. He further testified that the representations as to the credit of the house at *Matanzas* was made by the defendant to *him*, the witness, and that the defendant was informed by him that in making the shipment, he acted as *agent*, though he did not tell him who was his principal. After some further testimony, the plaintiff rested, and the counsel for the defendant moved that the plaintiff be nonsuited, on the grounds, 1. That there was no deception upon or injury to the plaintiff; and 2. That there was no evidence of fraud to submit to the jury. The chief justice of the superior court decided that the suit could be sustained only in the name of *Wood* and ordered a *nonsuit* to be entered. The plaintiff excepted and sued out a writ of error.

*R. Sedgwick,* for the plaintiff in error.

*S. P. Staples,* for the defendant in error.

*By the Court,* SAVAGE, Ch. J. In deciding the point excepted to, it must be conceded, for the purpose of this motion, that

NEW-YORK,
May, 1834.

Raymond
v.
Howland.

there was evidence enough to go to the jury, if the suit had been brought in the name of the right plaintiff. The question then is, whether the fraud must be practiced upon the plaintiff *personally*, or whether the action lies where the fraudulent representation is made to the plaintiff's clerk or agent.

Upon principle, it can make no difference whether a fraud is perpetrated upon the principal or agent; a clerk is an agent, and so is a factor or commission merchant. The agent is entrusted with the disposition of the property of the principal, and if he disposes of it in the manner that a prudent man would dispose of his own, he is not responsible to his principal for any loss which may be sustained. If the fraudulent representation be made to the *principal* himself, and damage ensue, it is the loss of the principal of course; and if a similar representation be made to an *agent* of any description, and there is no want of prudence on his part, the loss falls upon the the principal, and not upon the agent; so that it makes no difference to the principal whether the fraud be practiced upon himself or his agent. It cannot be alleged by the defendant that the agent is responsible to his principal, for that is a matter with which the defendant has no concern; if he has been guilty of a fraud which has caused damage, he is responsible to the injured party. He is liable but once; if the principal recovers, that recovery limits the extent of the defendant's liability, for if the agent should afterwards prosecute, the former recovery would be a bar. In any point of view, therefore, it seems to me the defendant is liable to the principal.

If it be said that the decision of the court below was, that Wood should bring the action because he was the *owner* of the property; I answer, the court could not have so decided, because that was a question of fact to be determined by the jury. If the court had put the nonsuit upon the *interest* of Wood as a witness, they would have excluded him as incompetent. He was admitted as a witness, and no doubt correctly; he had made advances upon the property, but the title was in the plaintiff; and when Wood parted with the possession of the property, he had no security for his money but the responsibility of the plaintiff. When the facts are

correctly understood, it is at least doubtful whether an action would lie in Wood's name for the property as against the consignees. He acted as *agent*, and so informed them; but even if he had an interest which he might have enforced in his own name, there can be no doubt that the release divested him of his interest, so as to render him a competent witness; and his credibility was a subject for the consideration of the jury. That the plaintiff had an interest has not been questioned, for there is no testimony contradicting that fact.

I have above endeavored to show that upon principle it makes no difference whether the fraud be practiced upon the *owner* of the property or his *agent;* and the position is supported by adjudged cases. The late case of *Allen* v. *Addington,* 7 Wendell, 10, was one where the business was transacted with the *clerk.* It is true that the plaintiff was at home, and was consulted by his clerk; but in the case of *Ward* v. *Curtis,* 3 Johns. R. 272, the plaintiff was from home; the business was wholly done with the clerk; the false representations were made to him alone, and upon him was the fraud perpetrated. He sold and delivered the goods, and no objection was raised on that ground.

The judgment must be reversed.